UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FILED
OCT 21 2011
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

UNITED STATES OF AMERICA,

Respondent,

v.

DOROTHY MAJU HENRY,

Defendant/Petitioner.

Criminal Action No. 02-00376-01 (CKK)

## MEMORANDUM OPINION
(October 21, 2011)

In March 2004, Defendant and Petitioner Dorothy Maju Henry ("Henry") was convicted by a jury in this Court on (a) one count of conspiracy to import one kilogram or more of heroin into the United States and (b) two counts of distributing or causing the distribution of one kilogram or more of heroin outside the United States knowing that it would be imported into the United States. Currently before the Court is Henry's [213], [219], [231][1] Motion for Relief Under 28 U.S.C. § 2255. Upon a searching review, the Court finds that the parties' submissions, the relevant authorities, and the record as a whole conclusively show that Henry is not entitled to the requested relief. Accordingly, the Court shall DENY Henry's [213], [219], [231] Motion for Relief Under 28 U.S.C. § 2255.[2]

---

[1] Unless otherwise indicated, all docket references are to *United States v. Henry*, Criminal Action No. 02-00376-01 (CKK) (D.D.C.).

[2] While the Court renders its decision today on the record as a whole, its consideration has focused on the following documents, listed in chronological order of their filing: Pet'r's Mot. for Relief Under Title 28 U.S.C. § 2255 ("Pet'r's [213] Mem."), ECF No. [213]; Resp't's Opp'n to Pet'r's Mot. for Post-Conviction Relief Pursuant to 28 U.S.C. § 2255, ECF No. [217]; Pet'r's Aff. in Supp. of Mot. for Reargument & Other Relief ("Pet'r's [219] Aff."), ECF No. [219]; Pet'r's Aff. in Further Supp. of Mot. for Reargument & Other Relief ("Pet'r's [224] Aff."), ECF

# I. BACKGROUND

On September 12, 2002, a federal grand jury indicted Henry and two co-defendants in connection with an international conspiracy to traffic heroin into the United States from Kenya and elsewhere between February 2000 and March 2002. *See* Indictment, ECF No. [1]. Henry was arrested in Kenya on September 20, 2002 and extradited to the United States on February 6, 2003. Henry's co-defendants were her sisters, Susan Kaluki Nzioki ("Nzioki") and Agnes Kamene ("Kamene"). Nzioki was ultimately tried alongside Henry and found not guilty. Kamene had not been arrested at the time of trial and remains a fugitive to this day.

Henry was charged with and tried on (a) one count of conspiracy to import one kilogram or more of a substance containing a detectable amount of heroin into the United States from Kenya and elsewhere and (b) two counts of distributing or causing the distribution of one kilogram or more of heroin outside the United States knowing that it would be imported into the United States. *See id.* On March 31, 2004, at the conclusion of an approximately six-week trial presided over by the undersigned, the jury found Henry guilty on all three counts. *See* Tr. of Trial R., ECF Nos. [153]-[169], at 3427-31. On January 5, 2005, the Court sentenced Henry to 288 months of imprisonment to be followed by five years of supervised release. *See* Judgment in a Criminal Case, ECF No. [182].

Henry filed a timely appeal and, on November 16, 2006, her conviction was upheld by the United States Court of Appeals for the District of Columbia Circuit in an unpublished decision.

---

No. [224]; Rep't's Resp. to Def.'s Supplemented Pro Se Habeas Corpus Mot., ECF No. [227]; Pet'r's Second Aff. in Supp. of Mot. for Reargument & Other Relief, ECF No. [228]; Pet'r's Emergency Mot. for a Writ of Habeas Corpus Under Newly Discovery Evidence ("Pet'r's [231] Mem."), ECF No. [231]; Pet'r's Mot. for this Court to Consider Attached Additional Evidence ("Pet'r's [232] Mem."), ECF No. [232].

*See* Judgment, *United States v. Henry*, No. 05-3009 (D.C. Cir. Nov. 16, 2006), Document No. [1004808]. Henry is currently serving her sentence at the Federal Correctional Institution in Danbury, Connecticut. *See* FEDERAL BUREAU OF PRISONS INMATE LOCATOR, http://www.bop.gov/iloc2/LocateInmate.jsp (last visited Oct. 3, 2011).

## II. LEGAL STANDARD

Under 28 U.S.C. § 2255, a prisoner in custody under sentence of a federal court may move the sentencing court to vacate, set aside, or correct its sentence if the prisoner believes that his sentence was imposed "in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). The circumstances under which such a motion will be granted, however, are limited in light of the premium placed on the finality of judgments and the opportunities prisoners have to raise most of their objections during trial or on direct appeal. "[T]o obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982). Nonetheless, "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues, and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255(b). However, the decision whether or not to hold a hearing is entrusted to the district court's discretion, particularly where, as here, the reviewing judge presided over the proceeding in which the petitioner claims to have been prejudiced. *United States v. Morrison*, 98 F.3d 619, 625 (D.C. Cir. 1996), *cert. denied*, 520 U.S. 1131 (1997). "If it plainly appears from the motion, any attached exhibits, and the record of prior

proceedings that the moving party is not entitled to relief, the judge must dismiss the motion." Rules Governing Section 2255 Proceedings for the United States District Courts, Rule 4(b).

## III. DISCUSSION

Henry's [213], [219], [231] Motion for Relief Under 28 U.S.C. § 2255 is premised upon four overarching arguments. Specifically, Henry contends that she is entitled to post-conviction relief because (1) her trial counsel rendered ineffective assistance of counsel, (2) her appellate counsel rendered ineffective assistance of counsel, (3) one of the Government's witnesses at trial has since recanted his testimony, and (4) her conviction is a case of "mistaken identity." The Court shall address each of Henry's contentions in turn. *See infra* Part III.A-D. Following that discussion, the Court shall explain why no Certificate of Appealability shall issue from this Court. *See infra* Part III.E.

### A. Henry Is Not Entitled to Relief Based on Her Contention that Her Trial Counsel Rendered Ineffective Assistance of Counsel

Henry's leading argument in favor of post-conviction relief is that her trial counsel's performance at trial abridged her Sixth Amendment right to effective assistance of counsel, as that right was articulated in *Strickland v. Washington*, 466 U.S. 668 (1984). To establish a successful claim for ineffective assistance of counsel under *Strickland*, a petitioner must prove both (1) "that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms," and (2) "that this error caused [her] prejudice." *United States v. Hurt*, 527 F.3d 1347, 1356 (D.C. Cir. 2008) (citing *United States v. Hughes*, 514 F.3d 15, 17 (D.C. Cir. 2008)). The reviewing court must begin with a strong presumption that counsel rendered adequate assistance and exercised reasonable professional judgment, *Cullen v. Pinholster*, __ U.S. __, 131 S. Ct. 1388, 1403 (2011), and it is the petitioner's burden to show

4

that counsel made errors "so serious" that counsel could not be said to be functioning as the counsel guaranteed by the Sixth Amendment, *Harrington v. Richter*, __ U.S. __, 131 S. Ct. 770, 787 (2011). Even then, the petitioner must further establish prejudice, a showing "[t]hat requires a 'substantial,' not just 'conceivable,' likelihood of a different result." *Cullen*, 131 S. Ct. at 1403 (quoting *Richter*, 131 S. Ct. at 791). "Even under *de novo* review, the standard for judging counsel's representation is a most deferential one," *Richter*, 131 S. Ct. at 788, and "[s]urmounting *Strickland*'s high bar is never an easy task," *Padilla v. Kentucky*, __ U.S. __, 130 S. Ct. 1473, 1485 (2010) (citations omitted).

In this case, Henry argues that her trial counsel's representation fell below the constitutional minimum because (1) he failed to properly advise her of her right to testify at trial, (2) he failed to call a specific fact witness to testify as to her assets, and (3) he failed to call a handwritting expert to contradict testimony offered by the Government. *See* Pet'r's [213] Mem. at 2-3. For the reasons set forth below, each of these arguments is without merit.[3]

First, Henry's allegation that her trial counsel failed to advise her of her right to testify at

---

[3] In correspondence buried among her moving papers, Henry identifies—in passing and without meaningful explanation or argument—a handful of other complaints about the adequacy of her trial counsel's performance (*e.g.*, her counsel's alleged failure to explain to the jury the difference between Kenyan shillings and United States dollars). *See* Ltr. from D. Henry to N. Silver dated Nov. 27, 2007, ECF No. [219-8]. It is not clear whether Henry intended to rely upon these complaints in support of the pending motion. To the extent that she did, her complaints are stated in such "vague and conclusory" terms that they are woefully inadequate, whether considered together or independently, to overcome the strong presumption that her trial counsel's representation was adequate and reasonable. *Simms v. United States*, 730 F. Supp. 2d 58, 61 (D.D.C. 2010); *see also United States v. Taylor*, 139 F.3d 924, 923 (D.C. Cir. 1998) (noting that "[s]ummary disposition" of an ineffective assistance of counsel claim "may [] be appropriate where the defendant has failed to present any affidavits or other evidentiary support for the naked assertions contained in his motion"). Regardless, her complaints are belied by the record, immaterial, or insufficient to cast material doubt on the validity of her convictions.

trial is fundamentally irreconcilable with her prior representations under oath to this Court. During trial, the Court conducted a searching inquiry into this precise issue after having Henry sworn in, and Henry unambiguously stated that she had, in fact, discussed her right to testify with her counsel. *See* Tr. of Trial R. at 2919-20. Regardless, even crediting Henry's current account, she is unable to establish that any shortcoming in the advice that she received from her counsel caused her actual prejudice because the Court independently advised Henry of her right. In an extended colloquy, the Court informed Henry that she had an unconditional right to testify (or not testify) and that this was a decision that she alone controlled; under oath, Henry responded that she understood and had knowingly and voluntarily decided that she would forego testifying. *See id.* at 2918-24. On this record, Henry cannot carry her burden of establishing that her counsel's error, if any, caused her prejudice.

Second, Henry contends that her trial counsel "failed to call at least one potential defense witness, a Captain Ngatia, to testify about [her] businesses in Kenya." Pet'r's [213] Mem. at 3. According to Henry, Captain Ngatia would have testified about her legitimate businesses in Kenya "to demonstrate that income from [those] businesses could have paid for belongings (her house and other things), which the jury learned of during trial." *Id.* Such testimony, however, would have been completely irrelevant because the Government did not rely upon "unexplained wealth" as a theory of Henry's guilt. *See* Tr. of Trial R. at 2915-16. Indeed, the Court specifically precluded the theory and it was never cited throughout the trial. The origins of Henry's wealth simply were not at issue. True, the jury did hear some testimony about Henry's house and other belongings, but such testimony was introduced only to corroborate other evidence that was directly relevant to Henry's guilt—most notably, several drug couriers testified

6

that they visited Henry's home in the course of making preparations to import heroin into the United States and the couriers consistently described Henry's home, her furniture, and other belongings. Furthermore, despite Henry's innuendo to the contrary, the jury did in fact hear testimony about her legitimate businesses in Kenya, and yet she offers no explanation as to how Captain Ngatia's testimony would have differed from, or materially added, to the testimony that the jury did hear. In short, Henry has not shown that the failure to call this one witness prejudiced her defense. At the same time, the decision of which witnesses to call at trial turns "upon tactical considerations of the moment and the larger strategic plan for trial." *Gonzalez v. United States*, 553 U.S. 242, 250 (2008). Given the foregoing, Henry has failed to provide any colorable basis for concluding that her counsel's decision not to call Captain Ngatia was anything other than the product of the reasonable exercise of his professional judgment. *See Simms*, 730 F. Supp. 2d at 61 (concluding that "vague and conclusory" allegations that counsel's representation was ineffective are insufficient to overcome the strong presumption of effective representation). On this record, Henry has neither overcome the strong presumption that her counsel's decision not to call this particular witness was reasonable nor shown that the anticipated testimony would likely have led to a different result at trial.

Third, Henry alleges that her trial counsel "failed to obtain a handwriting expert to review notes [that] government witnesses identified as produced by [her]." Pet'r's [213] Mem. at 3. The only reference to a note written by Henry took place during the testimony of Nancy Wankiku Kahiga, who testified that Henry wrote down her telephone numbers in Kenya on a piece of paper so that Ms. Kahiga could reach Henry upon arriving in the United States. *See* Tr. of Trial R. at 2111-19. But whether the note was or was not actually written by Henry was of virtually no

importance to the trial; rather, the central import of the note was that it identified Henry's telephone numbers, and independent evidence, including bank records, connected those telephone numbers to Henry. Meanwhile, the note played a small role at trial and the Government's overall case; given the substantial independent evidence establishing Henry's guilt, Henry has failed to demonstrate that her counsel's alleged failure materially affected the outcome at trial. Furthermore, Henry ignores the fact that the decision of whether or not to call a handwriting expert "can be a strategic decision that falls well within the range of reasonable professional assistance." *Hoover-Hankerson v. United States*, __ F. Supp. 2d __, 2011 WL 2452374, at *6 (D.D.C. June 21, 2011). In light of the foregoing considerations, Henry's "vague and conclusory" allegations that her counsel should have called a handwriting expert are insufficient to overcome the strong presumption that her counsel's decision was reasonable. *Simms*, 730 F. Supp. 2d at 61. Once again, Henry has neither overcome the strong presumption that her counsel's decision was reasonable nor shown that the anticipated testimony would likely have led to a different result at trial.

In sum, Henry has pointed to no set of facts that would support a finding that her trial counsel's performance fell below an objective standard of reasonableness or that any deficiency in his performance cause her actual prejudice. Accordingly, the Court concludes that Henry is not entitled to post-conviction relief based upon the performance of her trial counsel and the Court shall DENY her [213], [219], [231] Motion for Relief Under 28 U.S.C. § 2255 to the extent it rests on this basis.

B.   *Henry Is Not Entitled to Relief Based on Her Contention that Her Appellate Counsel Rendered Ineffective Assistance of Counsel*

While far from clear, Henry also appears to claim that she is entitled to post-conviction relief on the basis that her appellate counsel's performance on direct appeal fell below the constitutional minimum.[4] To the extent that Henry intended to raise such a claim, her arguments are poorly articulated, but they appear to be four-fold. The Court addresses each in turn.

First, Henry faults her appellate counsel for failing to raise an ineffective assistance of counsel claim pertaining to her trial counsel on direct appeal and advising Henry to instead raise her claim in a motion under 28 U.S.C. § 2255. Although Henry may believe that a direct appeal is the "superior vehicle" for raising such a claim, the United States Supreme Court disagrees, having observed that "in most cases a motion brought under § 2255 is preferable to direct appeal for deciding claims of ineffective assistance." *Massaro v. United States*, 538 U.S. 500, 504 (2003). Indeed, the United States Court of Appeals for the District of Columbia Circuit follows a "general practice" of declining to address claims of ineffective assistance of counsel on direct review, requiring defendants to raise such arguments in the first instance before the district court. *United States v. Rashad*, 331 F.3d 908, 909 (D.C. Cir. 2003). For these reasons, Henry's complaint is insufficient to overcome the strong presumption that her appellate counsel acted reasonably in declining to raise an ineffective assistance of counsel claim on direct appeal.

---

[4] The claim is raised in an affidavit by Elena Ruth Sassower ("Sassower"), *see* Aff. of Elena Ruth Sassower, ECF No. [219-3], even though the Court has repeatedly warned Henry that Sassower, who is neither an attorney nor a duly appointed representative, may not represent Henry's interests in this case, *see, e.g.*, Order (June 16, 2008), ECF No. [218], at 1. However, because Henry has submitted a separate affidavit purporting to incorporate the arguments raised in Sassower's affidavit, *see* Pet'r's [219] Aff., the Court shall assume, without deciding, that the arguments are properly before the Court and simply proceed to explain why they do not, in any event, entitle Henry to post-conviction relief.

Second, Henry intimates that there were a number of unidentified deficiencies in the briefs that her appellate counsel submitted on her behalf, but her complaints in this regard are framed in such "vague and conclusory" terms that they are insufficient to overcome the strong presumption that her appellate counsel's representation was adequate and reasonable. *Simms*, 730 F. Supp. 2d at 61. Indeed, the Court has carefully reviewed the briefs submitted by her appellate counsel and is unable to find any credible basis for concluding that her appellate counsel committed errors "so serious" that Henry was effectively deprived of the counsel guaranteed by the Sixth Amendment. *Richter*, 131 S. Ct. at 787.

Third, Henry speculates that her trial counsel, a Federal Public Defender, and her private appellate counsel may have had "social and other relationships." However, Henry adduces no evidence that would even remotely support such an allegation, which reduces it to rank speculation. Just as significantly, Henry has failed to explain how her allegations, even if assumed to be true, would allow this Court to conclude that she has been prejudiced. So far as the Court can tell, Henry raises the allegation about the relationship between her trial and appellate counsel as a possible explanation for why her appellate counsel failed to raise an ineffective assistance of counsel claim pertaining to Henry's trial counsel on direct appeal. However, as explained above, the Supreme Court has described motions for post-conviction relief under 28 U.S.C. § 2255 as the superior vehicle for raising ineffective assistance of counsel claims. Henry has exercised her right to raise such a claim through the pending motion and it has been rejected on the merits. *See infra* Part III.A. She has suffered no prejudice.

Fourth, and finally, Henry periodically complains that her appellate counsel failed to timely return or forward case files, or copies of case files, upon her request. Even assuming the

truth of Henry's allegations, they relate to events transpiring after the disposition of Henry's appeal, and therefore cannot support a finding of prejudice relevant to the pending motion.

In sum, Henry has pointed to no set of facts that would support a finding that her appellate counsel's performance fell below an objective standard of reasonableness or that any deficiency in her counsel's performance caused Henry actual prejudice. Accordingly, the Court concludes that Henry is not entitled to post-conviction relief based upon the performance of her appellate counsel and the Court shall DENY her [213], [219], [231] Motion for Relief Under 28 U.S.C. § 2255 to the extent it rests on this basis.

    C.    *Henry Is Not Entitled to Relief Based Upon the Post-Trial Recanting Affidavit By One of the Government's Witnesses*

Henry next contends that she is entitled to post-conviction relief because one of the Government's witnesses at trial—specifically, her nephew, John Mulatya Muema ("Muema")—has since attempted to recant his trial testimony inculpating Henry. *See* Pet'r's [213] Mem. at 3; Pet'r's [224] Aff. at 1. Prior to Henry's trial, Muema had been arrested in Minneapolis, Minnesota, while attempting to smuggle heroin into the United States. *See* Tr. of Trial R. at 569-74, 580-83. At Henry's trial, he testified that he worked for Henry and described in detail his role in and the scope of Henry's drug trafficking operations. *See id.* at 569-97, 604, 617-21, 639-53, 685-86. At the time of his testimony, Muema had already pled guilty to the charges against him and, as part of his plea agreement, had agreed to cooperate and testify in the case against Henry. *See id.* at 813-36. Following his testimony, Muema received the benefit of a downward departure under the United States Sentencing Guidelines for his cooperation, was sentenced to time served, and was deported to Kenya. *See* Judgment, *United States v. Kimani*, Criminal Action No. 01-00291 (JMR) (FLN) (D. Minn. Apr. 21, 2004), ECF No. [32].

On October 16, 2008, Muema, then living in Nairobi, Kenya, purportedly executed an affidavit recanting his testimony inculpating Henry. *See* Aff. of John Muema, ECF No. [224-1].[5] Muema's affidavit is a generalized attempt at recantation. He disclaims "the bulk" of the testimony that he provided at Henry's trial and avers that he only testified "after being coerced and or [sic] otherwise influenced by many subtile [sic] methods." *Id.* ¶ 7. He claims that "it was not [his] intention to give wrong testimony in the case against [his] auntie" and asserts "in retrospect [that] the matters [he] stated were not facts from [his] knowledge." *Id.* ¶ 8. Muema states that his "testimony that [Henry] was a mastermind of drug trafficking [sic] was a matter suggested to [him] by officers from [the] DEA's office and that [to] the best of [his] knowledge she has never been a drug trafficker." *Id.* ¶ 10(ix). He suggests that he only testified against Henry due to "the risk of [his] being given . . . life imprisonment." *Id.* ¶ 9(ii).

In this Circuit, "[r]ecanting affidavits and witnesses are looked upon with the utmost suspicion." *United States v. Kearney*, 682 F.2d 214, 219 (D.C. Cir. 1982) (internal quotation marks and citations omitted); *accord United States v. Mackin*, 561 F.2d 958, 961 (D.C. Cir. 1977). For at least two separate, independent reasons, Muema's affidavit is insufficient to warrant granting Henry post-conviction relief.

    1.  Henry Has Failed to Adduce Competent Evidence Showing that Muema's Trial Testimony Was In Fact False

The mere existence of a recanting affidavit is insufficient on its own to warrant post-conviction relief. Rather, when presented with such an affidavit, the district court must, at the bare minimum, be "reasonably well satisfied" that the witness's original testimony was in fact

---

[5] The Government disputes the authenticity of Muema's affidavit. However, the Court shall assume, without deciding, that the affidavit is authentic.

false. *Kearney*, 682 F.2d at 220 (citation omitted); *accord United States v. Mangieri*, 694 F.2d 1270, 1286-87 (D.C. Cir. 1982). The burden rests with Henry, as the proponent of post-conviction relief, to adduce "credible evidence" that would allow the Court to reach this conclusion. *Mackin*, 561 F.2d at 96. For several reasons, Henry has failed to discharge that burden and the Court is not reasonably well-satisfied that Muema's testimony at trial was false.

First, Muema's testimony was tested by "thorough cross-examination" at trial. *Kearney*, 682 F.2d at 220. Henry's trial counsel had the opportunity to, and in fact did, question Muema on the precise motivation that purportedly underlies his post-trial recanting affidavit—namely, his alleged desire to receive a more lenient sentence in the criminal action against him. *See* Tr. of Trial R. at 813-36. The jury was in a fOctober 21, 2011avorable position to evaluate the truthfulness (or lack thereof) of the testimony offered and it was free to credit (or discredit) the testimony and to assign it the appropriate weight in its deliberations.

Second, the undersigned, who presided over Henry's trial, personally had the opportunity to observe Muema's "demeanor" at trial and to assess his overall credibility. *Kearney*, 682 F.2d at 220. Based upon those direct observations, the undersigned found Muema's testimony to be, as a general matter, credible, a conclusion bolstered by the fact that Muema's testimony was corroborated by independent testimony offered by several other witness. *See infra* Part III.C.2. For example, one of the Government's witnesses, Judith Grace Akinyi, corroborated Muema's testimony concerning trips that she made to Pakistan in order to procure heroin on Henry's behalf—in particular, she testified that Muema drove her to the airport after leaving Henry's house. *See* Tr. of Trial R. at 2511-15. Two other witnesses, Teresia Githinji and Catherine Wanjiru Chabi, likewise testified that Muema drove them to various locations, including the

airport. *See id.* at 934-42, 1809-11. More broadly, six separate drug couriers, five of whom had been arrested in the United States attempting to smuggle heroin into the country, corroborated Muema's testimony concerning the scope of Henry's drug trafficking operations. They testified consistently with Muema that Henry was the leader of an international drug trafficking organization and had recruited and commissioned each of them to smuggle heroin from Pakistan to Kenya or from Kenya to the United States. *See id.* at 889-96, 928-79, 1047-48, 1157 (Teresia Githinji Test.); *id.* at 1220-66, 1300-76, 1381-93, 1506-10 (Florence Wanjira Karirimbi Test.); *id.* at 1776-79, 1800-02, 1806-28, 1837-40, 1850-57 (Catherine Wanjiru Chabi Test.); *id.* at 2076-89, 2093-119, 2169-220 (Nancy Wankiku Kahiga Test.); *id.* at 2400-31 (Hannah Nyambura Lee Test.); *id.* at 2487-518, 2526-39 (Judith Grace Akinyi Test.). Muema has offered no explanation as to why he and several other witnesses "independently contrived identical falsehoods." *Mackin*, 561 F.2d at 963.

Third, Muema's post-trial affidavit provides no credible "explanation as to how he learned of all the intricate details of the crime unless he had personally observed them." *Kearney*, 682 F.2d at 220. While Muema alleges, in conclusory form, that "officers from the DEA's office" provided him with the basis for his testimony, Muema Aff. ¶ 7, he neither identifies those officers nor explains how or why they would fabricate such details as the specific amounts of cash he would pick up on Henry's behalf, *see* Tr. of Trial R. at 618-19, the weather in Pakistan when he traveled there to purchase heroin, *see id.* at 639, and the like.

Fourth, Muema first purported to recant his testimony on October 16, 2008—more than four-and-a-half years after he testified in Henry's case. Such a large time lag casts doubt on the veracity of his recantation. *See United States v. Provost*, 969 F.2d 617, 621 (8th Cir. 1992)

14

(district court did not err in finding recantation not credible where, among other factors, the recantation came "more than four years" after trial), *cert. denied*, 506 U.S. 1056 (1993).

Fifth, following the resolution of the criminal action against him, Muema was sentenced to time served and deported to Kenya, where he apparently remains to this day. Neither his affidavit nor any other evidence introduced by Henry suggests that Muema would be willing and able to travel to this jurisdiction in order to testify as to his recantation in open court and submit to cross-examination. *See Russell v. Smith*, 68 F.3d 33, 36 (2d Cir. 1995) (noting that the witness's refusal to testify in open court undermined his recantation). The Court's consideration is therefore confined to the contents of Muema's affidavit, which on its face appears to be inadmissible hearsay if offered for the truth of the matters asserted therein. *See Mackin*, 561 F.2d at 962 (concluding that a recanting affidavit was hearsay and did not fall under the exception for statements against interest under FED. R. EVID. 804(b)(3)).

Sixth, Muema falls within that category of witnesses for which "the usual difficulties in successful prosecution for perjury would expose them to no real peril." *Mackin*, 561 F.2d at 962 (citation omitted). Muema was deported to Kenya after he was given a downward departure under the United States Sentencing Guidelines and sentenced to time served in his criminal case, and he apparently remains in Kenya to this day. Under these circumstances, Muema now has very little to lose by providing a false recantation in support of Henry's case.

Seventh, the Court is not oblivious to the close relationship between Henry and Muema. Muema is Henry's nephew, refers to Henry as his "auntie" in his affidavit, and testified at trial that he lived with and was financially supported by Henry for an extended period of time prior to his arrest. *See* Tr. of Trial R. at 608-09. Courts have routinely found that recantations by family

members are entitled to lesser weight. *See, e.g., Provost*, 969 F.2d at 621; *Russell*, 68 F.3d at 36; *United States v. Earles*, 983 F. Supp. 1236, 1254-55 (N.D. Iowa 1997), *aff'd*, 212 F.3d 1112 (8th Cir. 2000).

For foregoing reasons, the Court is not "reasonably well satisfied" that Muema's original trial testimony inculpating Henry was, in fact, false. On this basis alone, Henry's reliance upon Muema's recanting affidavit as a basis for post-conviction relief is misplaced. However, even excluding his trial testimony, the Government introduced more than sufficient independent trial testimony and physical evidence to support the jury's verdict.

    2.    Henry Has Failed to Show that a New Trial Would "Probably" Result in Her Acquittal

Even where the district court is satisfied that a witness's original testimony was false, the proponent of post-conviction relief bears the further burden of showing that, absent the recanted testimony, "'a new trial would *probably* produce an acquittal.'" *United States v. Williams*, 233 F.3d 592, 593 (D.C. Cir. 2000) (quoting *Thompson v. United States*, 188 F.2d 652, 653 (D.C. Cir. 1951)) (emphasis in original). In this case, Henry has made no attempt to explain how she could discharge that burden. Indeed, the record is clear that she could not, as there was more than sufficient independent evidence establishing Henry's guilt at trial. Most notably, the Government introduced the testimony of six separate drug couriers, five of whom had been arrested in the United States attempting to smuggle heroin into the country, who consistently testified that Henry was the leader of an international drug trafficking organization and had recruited and commissioned each of them to smuggle heroin from Pakistan to Kenya or from Kenya to the United States. *See* Tr. of Trial R. at 889-96, 928-79, 1047-48, 1157 (Teresia Githinji Test.); *id.* at 1220-66, 1300-76, 1381-93, 1506-10 (Florence Wanjira Karirimbi Test.);

*id.* at 1776-79, 1800-02, 1806-28, 1837-40, 1850-57 (Catherine Wanjiru Chabi Test.); *id.* at 2076-89, 2093-119, 2169-220 (Nancy Wankiku Kahiga Test.); *id.* at 2400-31 (Hannah Nyambura Lee Test.); *id.* at 2487-518, 2526-39 (Judith Grace Akinyi Test.). This testimony was only further corroborated by physical and documentary evidence linking Henry to the drug trafficking operations, evidence that included what a reasonable jury could credit as an audiotaped conversation between Henry and one of the drug couriers, as well as various bank, real estate, and business records. *See, e.g., id.* at 2194, 2202-04, 2212-14, 3179-80. Succinctly stated, even setting aside Muema's testimony, the Government introduced ample evidence at trial to support the jury's verdict. On this record, Henry has failed to explain how, absent Muema's recanted testimony, "'a new trial would *probably* produce an acquittal.'" *Williams*, 233 F.3d at 293 (emphasis in original).

In sum, the Court is not "reasonably well satisfied" that Muema's original trial testimony was in fact false and, even assuming its falsity, Henry has failed to show how a new trial would "probably" lead to a different result. Accordingly, the Court concludes that Henry is not entitled to post-conviction relief based upon Muema's recanting affidavit and the Court shall DENY her [213], [219], [231] Motion for Relief Under 28 U.S.C. § 2255 to the extent it rests on this basis.

D.   *Henry Is Not Entitled to Relief Based on Her Claim of "Mistaken Identity"*

In a last-ditch effort to secure post-conviction relief, Henry argues that "newly discovered evidence" establishes her actual innocence. Specifically, she alleges that dental records and other files demonstrate that "her identity has been mistaken" and that "she is not the person that the government intended to indict." Pet'r's [231] Mem. at 1. Even assuming, *arguendo*, that Henry

17

raised this argument in a timely manner,[6] it is completely without merit.

True, based upon the records submitted by Henry, it appears that upon her commitment to the custody of the Bureau of Prisons, Henry was assigned an inmate identification number (Reg. No. 21992-50) that previously belonged to a different "Dorothy Henry" who was incarcerated at the same facility from approximately March 1999 through February 2002. However, once the error was discovered, Henry was assigned a new inmate identification number (Reg. No. 26619-016) and her records were revised accordingly. *See* Inmate Req. to Staff Disposition dated May 6, 2011, ECF No. [232-1], at 1; Ltr. from N. Silver to D. Henry dated Apr. 29, 2011, ECF No. [232-1], at 1; *see also* FEDERAL BUREAU OF PRISONS INMATE LOCATOR, http://www.bop.gov/iloc2/LocateInmate.jsp (last visited Oct. 3, 2011). While this sequence of events may show, as Henry argues, that "the Dorothy Henry incarcerated in 1999-2002 is entirely different from" the Dorothy Henry convicted in this case, Pet'r's [231] Mem. at 2, it in no way suggests that "she is not the person that the government intended to indict," *id.* at 1. At best, the record permits an inference that the Bureau of Prisons made an administrative error *after* Henry was indicted, tried, convicted, and committed to federal custody; it does not cast any doubt upon the legality of Henry's confinement.[7] Indeed, the possibility of mistaken identity is "strongly negatived" by other evidence presented at Henry's trial. *Kearney*, 682 F.2d at 216. Most

---

[6] Henry first raised the argument in a submission filed with the Court on May 10, 2011. *See* Pet'r's [231] Mem.

[7] The Court notes that Henry does not suggest that the error had tangible consequences for the execution of her sentence. Regardless, such an argument would not be properly before this Court. *See Morton v. Bolyard*, __ F. Supp. 2d __, 2011 WL 4011370, at *1 n.3 (D.D.C. Sept. 9, 2011) ("To the extent that petitioner challenges the execution of his sentence . . . he must proceed under 28 U.S.C. § 2241 in the district where he is incarcerated.") (citations omitted).

notably, several witnesses independently identified Henry in open court as the person associated with the events underlying the Indictment. *See, e.g.*, Tr. of Trial R. at 567-68 (John Mulatya Muema Test.); *id.* at 879-80, 984-85, 1041 (Teresia Githinji Test.); *id.* at 1217-24, 1239-40 (Florence Wanjira Karirimbi Test.); *id.* at 1801-02, 1857 (Catherine Wanjiru Chabi Test.); *id.* at 2400-01 (Hannah Nyambura Lee Test.); *id.* at 2489-90 (Judith Grace Akinyi Test.). For these reasons, the Court concludes that Henry is not entitled to post-conviction relief based upon her claim of "mistaken identity" and the Court shall DENY her [213], [219], [231] Motion for Relief Under 28 U.S.C. § 2255 to the extent it rests on this basis.

E. *No Certificate of Appealability Shall Issue From This Court*

When the district court enters a final order resolving a petition under 28 U.S.C. § 2255 that is adverse to the petitioner, it must either "issue or deny a certificate of appealability." Rules Governing Section 2255 Proceedings for the United States District Courts, Rule 11(a). By statute, "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Such a showing demands that the petitioner demonstrate that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For the reasons set forth above, the Court concludes that Henry has failed to make that showing in this case, and, accordingly, no certificate of appealability shall issue from this Court. To the extent Henry intends to file an appeal, she must seek a Certificate of Appealability from the United States Court of Appeals for the District of Columbia Circuit in accordance with Federal Rule of

Appellate Procedure 22.

## IV. CONCLUSION

For the reasons set forth above, the Court shall DENY Henry's [213], [219], [231] Motion for Relief Under 28 U.S.C. § 2255. Furthermore, no Certificate of Appealability shall issue from this Court. To the extent Henry intends to file an appeal, she must seek a Certificate of Appealability from the United States Court of Appeals for the District of Columbia Circuit in accordance with Federal Rule of Appellate Procedure 22. An appropriate Order accompanies this Memorandum Opinion.

Date: October 21, 2011

/s/ Colleen Kollar-Kotelly
**COLLEEN KOLLAR-KOTELLY**
United States District Judge